IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


**KENNETH J. FLETCHER,**

        **Plaintiff,**

   vs.                                      Civil Action 2:09-CV-1130
                                                Judge Graham
                                                Magistrate Judge King

**WARDEN MICHAEL D. SHEETS,**
***et al.*,**

        **Defendants.**


### REPORT AND RECOMMENDATION

Plaintiff, a state prisoner, alleges that, while incarcerated at the Ross Correctional Institution ("RCI"), defendants -- employees of the Ohio Department of Rehabilitation and Correction ("ODRC") and officers at RCI -- subjected plaintiff to conditions that constituted cruel and unusual punishment, failed to protect plaintiff and failed to provide prescription medication.  This matter is now before the Court on *Defendants' (Sheets and Thornsberry) Partial Motion to Dismiss Amended Complaint*, Doc. No. 34 ("*Motion to Dismiss*").  For the reasons that follow, it is **RECOMMENDED** that the *Motion to Dismiss* be **GRANTED in part and DENIED in part**.

**I.    BACKGROUND**

Plaintiff, an inmate in the custody of the ODRC, has been incarcerated at RCI since November 23, 2005.  *Affidavit of Kenneth Fletcher*, ¶¶ 1-2, attached as *Exhibit 1* to *Plaintiff's Memorandum in Opposition to Partial Summary Judgment*, Doc. No. 46 ("*Plaintiff's Supplemental Response*").  Plaintiff filed this action on December 16,

2009.  *Complaint*, Doc. No. 1.  On January 27, 2011, plaintiff filed an amended complaint, naming as defendants RCI and six individuals, including RCI Warden Michael D. Sheets and RCI administrative assistant Marty Thornsbury.[1]  *Amended Complaint*, Doc. No. 33, ¶¶ 6-7.[2] Plaintiff's claims are based on the events involving, and following, his placement in isolation with another inmate, Jasen Craven, on January 4, 2008.  *Id*. at ¶¶ 3-4.  Specifically, plaintiff alleges that defendant corrections officers David Tumbleson, Grady Warren and/or Jerry Nichols refused to move plaintiff from the cell after plaintiff expressed fear of injury from Mr. Craven, who allegedly disliked Muslims.  *Id*. at ¶¶ 23-28.  Plaintiff alleges that Mr. Craven attacked him that night and plaintiff was hospitalized.  *Id*. at ¶¶ 29-32. Following plaintiff's release from the hospital on January 16, 2008,[3] he further alleges that RCI officials refused to administer his prescribed pain medication for over 12 hours.  *Id*. at ¶¶ 34-35.

On January 27, 2011, defendants Michael D. Sheets and Marty Thornsbury ("the moving defendants") moved to dismiss the *Amended Complaint* in part, arguing, *inter alia*, that plaintiff failed to exhaust his administrative remedies as to certain claims and defendants and ask the Court to dismiss Counts 3, 4 and 5 and dismiss paragraphs 34 and 35 of the *Amended Complaint*.

---

[1]The *Motion to Dismiss* identifies this defendant as "Thornsberry" rather than "Thornsbury," as listed in the *Amended Complaint*, Doc. No. 33.

[2]All of the defendants, including defendants Sheets, Thornsbury, Gordon Price, David Tumbleson, Grady Warren and Jerry Nichols, filed a motion to dismiss on May 3, 2011, Doc. No. 51, which motion remains pending.

[3]The *Amended Complaint* refers to a hospital release in 2009.  *Id*. at ¶ 34.  Other references to the time-frame in the *Amended Complaint* suggest that this reference was in error and that the release was actually in 2008.

After plaintiff filed his opposition to the *Motion to Dismiss*, the Court advised the parties of its intent to convert the *Motion to Dismiss* to one for summary judgment under Rule 56 and ordered additional briefing on the issue of exhaustion. *Order*, Doc. No. 40. With the filing of *Plaintiff's Supplemental Response*, and *Defendants' Reply to Plaintiff's Memorandum in Opposition to Defendants' Now Converted Motion for Partial Summary Judgment*, Doc. No. 53 ("*Defendants' Supplemental Reply*"), this matter is now ripe for resolution.

## II. STANDARD FOR SUMMARY JUDGMENT

The standard for summary judgment[4] is well established.  This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970).  Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which

---

[4] As discussed *supra*, the Court advised the parties of its intent to treat the *Motion to Dismiss* as one for summary judgment.

that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson,* 477 U.S. at 251.

The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Catrett,* 477 U.S. at 323. Once the moving party has met its initial burden, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250 (quoting former Fed. R. Civ. P. 56(e)); *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir. 1995)("nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial"). "Once the burden of production has so shifted, the party opposing summary judgment cannot rest on the pleadings or merely reassert the previous allegations. It is not sufficient to 'simply show that there is some metaphysical doubt as to the material facts.'" *Glover v. Speedway Super Am. LLC,* 284 F.Supp.2d 858, 862 (S.D. Ohio 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). Instead, the non-moving party must support the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."

*Glover,* 284 F.Supp. 2d at 862 (citing *InteRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989)).  Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties."  *Id. See also* Fed. R. Civ. P. 56(c)(3).

**III. DISCUSSION**

    **A.  Exhaustion**

The moving defendants contend that plaintiff has failed to exhaust his administrative remedies as to Count 3 (failure to provide prescription medication), 4 (unconstitutional custom or policy based on refusal to provide prescription medication) and 5 (failure to train).

    **1.  Standard for Exhaustion**

The Prison Litigation Reform Act ("PLRA") requires that a prisoner filing a claim under federal law relating to prison conditions first exhaust available administrative remedies.  *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  The statute provides, in pertinent part:

> No action shall be brought with respect to prison conditions under [section 1983 of this title], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

In order to satisfy this exhaustion requirement, an inmate plaintiff must "complete the administrative review process in

5

accordance with the applicable procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  "[F]ailure to exhaust is an affirmative defense under the PLRA, and [ ] inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007).  Exhaustion is not a jurisdictional predicate but the requirement is nevertheless mandatory, *Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999), even if proceeding through the administrative procedure would appear to the inmate to be "futile."  *Hartsfield v. Vidor*, 199 F.3d 305, 308-10 (6th Cir. 1999).

Ohio has established a procedure for resolving inmate complaints. Ohio Admin. Code § 5120-9-31.  The procedure is available to an inmate "regardless of any disciplinary status, or other administrative or legislative decision to which the inmate may be subject," § 5120-9-31(D), and is intended to "address inmate complaints related to any aspect of institutional life that directly and personally affects the grievant," including "complaints regarding policies, procedures, conditions of confinement. . . ." § 5120-9-31(A).

The administrative procedure governing most inmate grievance consists of three steps.  Ohio Admin. Code § 5120-9-31(K).  First, an inmate must file an informal complaint with "the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint."  Ohio Admin. Code § 5120-9-31(K)(1).  If that complaint does not result in a decision satisfactory to the inmate, the inmate can appeal the decision to the Inspector of Institutional Services.  Ohio Admin. Code § 5120-9-31(K)(2).  If that appeal is found to be without merit, the

inmate can then appeal the decision to the Chief Inspector. Ohio Admin. Code § 5120-9-31(K)(3).

Grievances against a warden, however, do not follow this three-step procedure. Instead, such grievances "must be filed directly to the office of the chief inspector[.]" Ohio Admin. Code § 5120-9-31(M). Moreover, "[s]uch grievances must show that the warden . . . was personally and knowingly involved in a violation of law, rule or policy, or personally and knowingly approved or condoned such violation." *Id.*

### 2. Application

In the case *sub judice*, the moving defendants proffer the Declaration of Robert Whitten, RCI's Institutional Inspector, and Declaration of Suzanne Evans, a correctional grievance officer with ODRC's Central Office. *See Exhibit A*, ¶ 2 ("*Evans Declaration*") and *Exhibit B*, ¶ 2 ("*Whitten Declaration*"), attached to the *Motion to Dismiss*. Mr. Whitten avers that plaintiff has never filed any notifications of grievance with RCI's Office of the Institutional Inspector. *Whitten Declaration*, ¶ 3. Ms. Evans avers that, from January 1, 2008 until the present, plaintiff has filed only one notification of grievance directly with the Chief Inspector.[5] *Evans Declaration*, ¶ 8; *Exhibit A-1*, pp. 1-2, attached thereto. The first page of this grievance ("Grievance 1") complains that defendant Thornsbury placed plaintiff in isolation, at the direction of Warden Sheets, with an inmate known to dislike Muslims and who subsequently

---

[5]This grievance is dated January 25, 2008, with a receipt stamp date January 29, 2008. *Exhibit A-1*, attached to the *Motion to Dismiss* ("Grievance 1").

attacked plaintiff, resulting in plaintiff's hospitalization. *Exhibit A-1*, p. 1. The second page of Grievance 1 details plaintiff's belief that he was placed in isolation for refusing to participate in a news interview, and plaintiff's opinion that Warden Sheets acted unprofessionally and vindictively. *Id*. at 2. Grievance 1 was denied on May 21, 2008. *Exhibit A-1*, p. 3; *Evans Declaration*, ¶ 8. The moving defendants contend that Grievance 1 does not address any of the claims based on events arising after January 16, 2008, *i.e.*, following plaintiff's discharge from the hospital on January 16, 2008 (events underlying Counts 3 and 4). *Motion to Dismiss*, pp. 6-7 (citing Grievance 1). The moving defendants further argue that plaintiff failed to exhaust his administrative remedies as to Warden Sheets's failure to train (Count 5). The moving defendants therefore conclude that they are entitled to summary judgment on Count 3 (failure to provide prescription medication), Count 4 (unconstitutional custom or policy based on refusal to provide prescription medication) and Count 5 (failure to train). *Id*.

Plaintiff avers that, on January 29, 2008, he "submitted two different documents as grievances directly to the Chief Inspector. Both grievances had the same first page; however, the second pages of the grievances are different because I wished to provide additional information. I filed both grievances at the same time." *Plaintiff Affidavit*, ¶ 11. These two grievances include Grievance 1 and the document attached as *Exhibit 2* to *Plaintiff Affidavit* ("Grievance 2") (collectively, "grievances"). *Plaintiff Affidavit*, ¶¶ 11-13. Unlike Page 2 of Grievance 1, Page 2 of Grievance 2 specifically complains that, after plaintiff was released from the hospital, a "Dr. Coulter"

told him that plaintiff's medication may be dispensed only by staff nurses or doctors. Grievance 2, p. 2. After spending a night in isolation, plaintiff asked an unidentified nurse for medication. *Id*. Although she initially declined plaintiff's request, the nurse gave plaintiff his prescribed medication the next day. *Id*. Plaintiff argues that the existence of these two grievances (with identical first pages and different second pages) creates a genuine issue of material fact because there is a dispute as to "which version is correct" and that determination "will have an effect on the outcome of the claims at issue[.]" *Plaintiff's Supplemental Response*, pp. 6-10. Plaintiff further argues that any failure to specifically identify a particular individual or failure to articulate a specific legal theory does not render his grievances inadequate. *Id*. at 8-9.

In reply, the moving defendants proffer the Declaration of Linda Coval, Deputy Chief Inspector, Office of the Chief Inspector of ODRC. *Exhibit C*, ¶ 2 ("*Coval Declaration*"). As Deputy Chief Inspector, Ms. Coval monitors the application and execution of the inmate grievance procedure throughout all ODRC institutions. *Id*. Ms. Coval avers that her office, "[a]s a matter of course, maintains a copy of each page of each grievance document it receives" even if a document appears to be a duplicate grievance. *Id*. at ¶ 4. Therefore, "[i]f Mr. Fletcher had filed such a document," *i.e.*, Grievance 2, Ms. Coval's office would maintain a copy of it. *Id*. at ¶ 5. Her office has only one two-page grievance filed by plaintiff: Grievance 1. *Id*.

9

### a. Claims against Warden Sheets

#### (1) Counts 3 and 4

The moving defendants have the burden of establishing the absence of a genuine issue of material fact as to failure to exhaust administrative remedies. *See Risher v. Lappin*, 639 F.3d 236 (6th Cir. 2011) (citing Fed. R. Civ. P. 56(a)). Here, the moving defendants concede that the issue of exhaustion as to Count 3 (failure to provide prescription medication) and to Count 4 (unconstitutional custom or policy based on refusal to provide prescription medication) involves a credibility determination as to Grievance 2, which, on page 2, addresses events occurring after plaintiff was released from the hospital. *Cf. Defendants' Supplemental Reply*, p. 2 (arguing that plaintiff has failed to exhaust his administrative remedies "[n]otwithstanding the lack of credibility of the alleged second grievance"). On summary judgment, however, the Court may not make credibility determinations or weigh the evidence. *Anderson*, 477 U.S. at 255. Instead, this Court must construe the evidence in a manner most favorable to plaintiff. *See Adickes*, 398 U.S. at 157., The Court therefore concludes that there exists a genuine issue of material fact as to whether or not plaintiff actually filed Grievance 2.

However, even assuming that plaintiff filed Grievance 2 directly with the Chief Inspector, he nevertheless failed to properly exhaust his administrative remedies as to Counts 3 and 4 as against Warden Sheets. Under the Ohio Administrative Code, plaintiff was required to show in Grievance 2 that Warden Sheets "was personally and knowingly

involved in a violation of law, rule or policy, or personally and knowingly approved or condoned such a violation." Ohio Admin. Code § 5120-9-31(M).  Here, the first page of Grievance 2, which is entirely unrelated to the facts underlying Counts 3 and 4, alleges that defendant Thornsbury placed plaintiff in isolation, at the direction of Warden Sheets, with an inmate known to dislike Muslims and who subsequently attacked plaintiff.  Grievance 2, p. 1.  The second page of Grievance 2, however, relates to an alleged refusal to administer medication, *i.e.*, Counts 3 and 4.  Plaintiff makes no mention whatsoever of Warden Sheets in connection with these claims.  Instead, as discussed *supra*, plaintiff refers to one Dr. Coulter and complains that an unidentified nurse gave him medication after a day's delay.  *Id*.  Because plaintiff failed to allege that Warden Sheets was "personally and knowingly involved" in the alleged refusal to provide medication to plaintiff or that Warden Sheets "personally and knowingly approved or condoned" this alleged deprivation, plaintiff failed to comply with the procedure mandated by Ohio Admin. Code § 5120-9-31(M).  *See Morgan v. Beightler*, No. 1:09-cv-2190, 2011 U.S. Dist. LEXIS 57229, at *11-13 (N.D. Ohio May 26, 2011) (dismissing complaint for failure to exhaust where inmate plaintiff failed to explain how defendant warden was personally or knowingly involved or personally or knowingly approved or condoned alleged acts of retaliation).  Plaintiff therefore failed to exhaust his administrative remedies as to Warden Sheets in connection with Counts 3 and 4.

Plaintiff's arguments do not militate a different result.  He contends that courts apply a "relaxed standard" when construing the

adequacy of grievances, that a failure to name a defendant in a grievance is not fatal and that the PLRA does not "'define the boundaries of proper exhaustion.'"  *Plaintiff's Supplemental Response*, pp. 7-9 (quoting, *inter alia*, *Jones v. Bock*, 549 U.S. 199, 218 (2007)).  While plaintiff is correct that the PLRA does not require him to "name all defendants," *see Jones*, 549 U.S. at 217-19, plaintiff is nevertheless required to follow "critical procedural rules" in order to properly exhaust his grievance.  *See id.* at 217-18 (discussing requirements of particular policies at issue); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").  Therefore, in the case *sub judice*, plaintiff must comply with the requirements set forth under Ohio law in order to properly exhaust his administrative remedies.  This includes the obligation that plaintiff show in his grievance that Warden Sheets was "personally and knowingly involved" in the alleged refusal to provide medication to plaintiff or show that Warden Sheets "personally and knowingly approved or condoned" this alleged deprivation.  *See* Ohio Admin. Code § 5120-9-31(M). This is a "critical procedural rule" under Ohio law with which plaintiff must comply.  *See Jones*, 549 U.S. at 217-19; *Woodford*, 548 U.S. at 90-91. *See also Tate v. Williams*, No. 2:06-cv-47, 2007 U.S. Dist. LEXIS 17767, at *5-7 (S.D. Ohio Mar. 12, 2007) (stating that a finding that plaintiff failed to state warden's involvement with particularity, and therefore failed to exhaust, was based on Ohio law, not the PLRA). Accordingly, plaintiff has not shown that he exhausted his

administrative remedies as to Counts 3 and 4 as against Warden Sheets.

### (2)  Count 5

The moving defendants also assert that plaintiff failed to grieve Warden Sheets's alleged failure to train (Count 5).  *Motion to Dismiss*, p. 4.  This Court agrees.  The United States Court of Appeals for the Sixth Circuit "has interpreted the PLRA's exhaustion requirement to be satisfied if a Plaintiff files a grievance granting the prison 'fair notice' of the claim and appeals the denial of the grievance to the highest possible level."  *Pack v. Martin*, No. 04-2218, 174 Fed. Appx. 256, at *262 (6th Cir. Mar. 27, 2006) (citing *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. Feb. 28, 2003)).  In the case *sub judice*, plaintiff alleges in both grievances that Warden Sheets ordered that plaintiff be placed in isolation.  Grievance 1, p. 1; Grievance 2, p. 1.  Additionally, after complaining that he believes that he was punished for refusing to attend a news interview, plaintiff speculates in Grievance 1 that he will be placed back in isolation and is "writing this grievance in hopes that something is done about the unprofessional acts of Warden sheets [sic] which are wholly vindictive in nature."  Grievance 1, p. 2.  Plaintiff's reference in Grievance 1[6] to "unprofessional acts" does not challenge any "official" RCI training practice or policy and did not provide fair notice of such inadequate training claim as alleged in the *Amended Complaint*.  Moreover, the context of the alleged "unprofessional acts" of Warden Sheets, *i.e.*, that the acts were

---

[6]As discussed at length *supra*, the second page of Grievance 2 makes no reference whatsoever to Warden Sheets.

"vindictive," suggests that these acts were tied to a single incident, *i.e.*, plaintiff's refusal to attend a news interview on January 4, 2008, rather than because of any official RCI policy or failure to train. Therefore, even construing plaintiff's grievances liberally, *cf. LaFountain v. Martin*, 334 Fed. Appx. 738, at *740 (6th Cir. June 3, 2009) (citing *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (stating that applying a "relaxed standard" to an inmate's grievance is appropriate)), the Court concludes that plaintiff did not grieve his failure to train claim against Warden Sheets.

### b. Claims against defendant Thornsbury

The moving defendants also contend that plaintiff failed to exhaust his administrative remedies as to Counts 3 and 4 as against defendant Thornsbury.[7] Plaintiff, who avers that he filed both grievances directly with the Chief Inspector, *Plaintiff Affidavit*, ¶¶ 11-13, apparently concedes that he failed to follow the grievance procedures outlined in Ohio Admin Code § 5120-9-31(K). However, plaintiff argues that the procedure that he actually followed was proper because the grievances against defendant Thornsbury (and the other defendants) also concerned Warden Sheets. *Plaintiff's Supplemental Response*, p. 9.

This Court disagrees. For the reasons stated *supra*, plaintiff

---

[7] In later briefing, the moving defendants raise exhaustion arguments as to defendants Price, Tumbleson, Warren and Nichols. *Defendants' Supplemental Reply*, pp. 3-4. However, the instant motion, which was previously converted into a motion for summary judgment, was filed on behalf of only defendants Sheets, Thornsbury and John Doe. Accordingly, the Court will address the merits of the exhaustion argument only as to these defendants and will address arguments as to the other named defendants when it considers the more recently filed motion to dismiss on behalf of all defendants, Doc. No. 51.

failed to properly exhaust his available administrative remedy even as to Warden Sheets in connection with the allegations underlying Counts 3 and 4. Ohio Admin. Code § 5120-9-31(M). As to non-warden defendants, such as defendant Thornsbury, plaintiff was required to follow the grievance procedures outlined in Ohio Admin. Code § 5120-9-31(K). Specifically, plaintiff was required to first file an informal complaint with "the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint," § 5120-9-31(K)(1), and then appeal to the Inspector of Institutional Services, § 5120-9-31(K)(2) before appealing to the Chief Inspector. In choosing to bypass the first two steps, plaintiff failed to properly exhaust his administrative remedies as against defendant Thornsbury on Counts 3 and 4.[8]

### C. "John Doe" Defendant

Finally, the moving defendants argue that the claims against the "John Doe" defendant be dismissed. Despite having the opportunity to conduct discovery, *Preliminary Pretrial Order*, Doc. No. 17, plaintiff has not identified or served any other defendant. Rule 4 of the Federal Rules of Civil Procedure requires that a court dismiss claims against such defendants (or order that service be made within a certain time period) unless plaintiff has shown good cause for the failure. Fed. R. Civ. P. 4(m). The *Amended Complaint* was filed on January 25, 2011, and the John Doe defendant has not been named or

---

[8]The Court nevertheless finds that the moving defendants' request to dismiss paragraphs 34 and 35 of the *Amended Complaint*, which allege that RCI officials refused to administer his prescribed pain medication for over 12 hours, should be denied at this time in light of the pending motion to dismiss, Doc. No. 51.

served with process as of the date of this *Report and Recommendation*. In *Plaintiff's Supplemental Response*, he argues generally that RCI is in a better position to identify unknown officers, but plaintiff does not assert good cause for his failure to meet the requirements of Rule 4(m).

**WHEREUPON**, it is **RECOMMENDED** that *Defendants' (Sheets and Thornsberry) Partial Motion to Dismiss Amended Complaint*, Doc. No. 34, be **GRANTED in part and DENIED in part**.  Specifically, it is **RECOMMENDED** that the *Motion to Dismiss* be

1. **GRANTED** as to Counts 3 and 4 as against defendants Warden Michael D. Sheets and Marty Thornsbury;
2. **DENIED** as to paragraphs 34 and 35 of the *Amended Complaint*;
3. **GRANTED** as to Count 5; and
4. **GRANTED** without prejudice as to the John Doe defendant.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation.*

*See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).


<u>June 10, 2011</u>                             <u>    *s/Norah McCann King*    </u>
                                      Norah M<sup>c</sup>Cann King
                              United States Magistrate Judge